Inga F. DANVILLE, Plaintiff–
Appellant,

v.

REGIONAL LAB CORPORATION, a
New Mexico corporation doing busi-
ness as Tricore Reference Laborato-
ries, Defendant–Appellee.

No. 01–2134.

United States Court of Appeals,
Tenth Circuit.

June 12, 2002.

Thomas E. Chism, Albuquerque, NM, for Plaintiff–Appellant.

John A. Bannerman and Rikki L. Quintana of Krehbiel, Bannerman & Williams, P.A., Albuquerque, NM, for Defendant–Appellee.

Before MURPHY, McKAY, and BALDOCK, Circuit Judges.

MURPHY, Circuit Judge.

Plaintiff-appellant Inga F. Danville appeals from the district court's order granting summary judgment in favor of defendant Regional Lab Corporation, doing business as Tricore Reference Laboratories (Tricore) on her complaint alleging violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA). Because we conclude that plaintiff made a sufficient showing of pretext to survive summary judgment on her ADEA claim, we reverse and remand.[1]

## FACTS

Plaintiff was born in 1934. She began employment with Presbyterian Hospital (Presbyterian) in 1992. Her title at Presbyterian was "blood bank manager."[2] Her duties in this position included managing the transfusion service, the donor service, and the apheresis unit at Presbyterian Northside, Presbyterian Kaseman, and Downtown Presbyterian.

She was working as Presbyterian's manager of transfusion services in 1998, when Presbyterian's laboratory unit merged with defendant Tricore. Under the terms of the merger, plaintiff's job was scheduled to end on July 1, 1998.

Plaintiff transferred to a Presbyterian facility in Clovis, New Mexico, to work as a laboratory supervisor on June 27, 1998.[3] On March 12, 1999, she applied for the

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**2.** Plaintiff stated that at least part of the time while she was employed at Presbyterian, her job title was "blood bank supervisor," technically a lower-level position than manager. Aplt.App. at 23 (depo. p. 8).

**3.** Plaintiff was also offered a Tech IV position at Presbyterian, but turned it down because she considered it a demotion. The Tech IV position involved fewer managerial duties than the position she had and about a ten percent cut in pay. Tricore argues that the fact that it offered this position to plaintiff

position of Manager of Transfusion Services at defendant's Albuquerque office. She was sixty-four years old at the time she applied for the position. This position would be responsible for management of the transfusion service at Presbyterian, at Kaseman, at UNM, and any other transfusion service work at Tricore.

The selection committee for the Manager of Transfusion Services position met on April 29, 1999. The committee members were Dr. Ronnie J. Garner, Marcia Ash, Dr. Mehraboon Irani, Carol Tulenko, Marcia Woolley, Terri Wallis, and Jennifer Tripp. The committee had before it seven resumes. Carol Tulenko had organized the resumes into two groups prior to the meeting.

Five of the resumes, including plaintiff's, were included in Group 1, identified as "highly qualified." Aplt.App. at 46. These candidates had some graduate work or a master's degree, and "[e]xperience in similar to more complex organizations." *Id.* The remaining two candidates were placed in Group 2; these candidates had experience only in a smaller setting or minimal time in transfusion service. *Id.*

Carol Tulenko prepared a chart before the meeting, briefly setting out each candidate's experience, education, and years in management. A space was provided for notes next to each candidate's listing. Copies were circulated to each member of the committee. The appellate record contains only one copy of the chart, the one filled in by Ms. Tulenko. On Ms. Tulenko's copy of the chart, next to plaintiff's name, appears a single word: "later." *Id.* at 47. This was the only one-word entry on the chart; Ms. Tulenko evaluated the other candidates in more specific terms either as lacking in skills (those not interviewed) or as "good" or "strong" candidates (those who ultimately received interviews). *Id.*

During the April 29, 1999 meeting, the committee discussed the qualifications of each candidate. Marcia Woolley mentioned that some of the blood bank employees had come to her and expressed concerns that plaintiff should not be selected to fill the position. Prior to the meeting, Marcia Ash and Carol Tulenko had discussed the fact that plaintiff was perceived by her co-workers as having an abrasive management style. A decision was made not even to interview plaintiff for the position.

Dr. Garner considered plaintiff a strong candidate. He asked the committee why they had not specifically reviewed plaintiff's resume and why she was not being interviewed for the position. He was told[4] that the decision had simply been made that plaintiff would not be interviewed.

Dr. Garner also remembered somebody on the committee saying "she might not be around very long anyway." *Id.* at 37 (depo. pp. 8–9). He did not remember who made that comment. Carol Tulenko, Marcia Ash, and Marcia Woolley were each asked at their depositions about the comment and did not recall that any such comment was made. Dr. Garner further stated that he thought the comment was age-related.

The committee decided to conduct telephone interviews with all of the Group 1 candidates except for plaintiff. The committee ultimately selected another of the Group 1 candidates, Cheryl Richards, for

---

proves it did not discriminate against her on the basis of age. Plaintiff's representations about the position, however, have created at least a factual issue concerning whether it would have been a demotion (as plaintiff argues) or a lateral move (as Tricore claims).

**4.** Either Jennifer Tripp or Marcia Ash made this statement to Dr. Garner; he could not remember who.

the position. Ms. Richards was forty-seven years old at the time of her selection.

## ANALYSIS

We review the district court's grant of summary judgment de novo. Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and all reasonable inferences derived therefrom in the light most favorable to the nonmoving party.

*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir.) (citations omitted), *petition for cert. filed*, 70 U.S.L:W. 3410 (U.S. Dec. 14, 2001) (No. 01–881).

### 1. Direct evidence of discrimination

■ A plaintiff can prove that her employer discriminated against her by providing either direct or circumstantial evidence of discrimination. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons. *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir.1990). Circumstantial evidence allows the jury to draw a reasonable inference that discrimination occurred. *Stone*, 210 F.3d at 1136.

■ The only evidence in this case that might constitute direct evidence of age discrimination was the comment by

an undisclosed decision-maker that plaintiff might not be around very long. On its face, the comment is ambiguous; it could refer either to plaintiff's age or to her tendency to change jobs frequently. There is evidence in the record that supports either interpretation. For this reason, the comment is at most circumstantial, and not direct, evidence of discrimination. *See, e.g, Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 583 (1st Cir.1999); *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 953 (10th Cir. 1996).

### 2. Circumstantial evidence of discrimination

This court evaluates claims of discrimination that rely on circumstantial evidence using the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Stone*, 210 F.3d at 1137. The district court found that plaintiff easily made her prima facie case. Tricore does not mount a challenge to this finding.

■ Once plaintiff has established a prima facie case of age discrimination, this creates a presumption of discriminatory intent, that the employer may rebut by asserting a facially nondiscriminatory reason for its actions. *Id.* Tricore advances the following reasons for not interviewing and/or hiring plaintiff:

1. The successful candidate, Ms. Richards, had more recent experience [5]

---

[5]. Although Tricore now casts the issue as who had the "more recent" centralized blood banking experience, this represents slippage from its original position. The rationale given at most of the deposition testimony by Tricore employees was that plaintiff had no centralized blood banking experience *at all*. For example, Carol Tulenko testified as follows:

Q. And you thought Ms. Danville *did not have experience* in centralized blood banking?
A. Correct.
Q. And she did not get an interview because of that?
A. Correct.

than plaintiff in managing a large multi-site and/or centralized blood bank system; and

2. One of the committee members, Marcia Woolley, expressed her belief at the April 29 meeting that plaintiff did not have the requisite management style and "team building" people skills necessary for the job.

*See* Aplee. Br. at 10–12.

■ Once the employer has asserted a facially nondiscriminatory reason for its actions, the plaintiff may still resist summary judgment, either by presenting evidence that the employer's reason is pretextual, i.e., unworthy of belief, or by otherwise introducing evidence of a discriminatory motive. *Stone*, 210 F.3d at 1137. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v.*

*Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted). When assessing whether plaintiff has made an appropriate showing of pretext, we must consider the evidence as a whole. *See Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts.").

■ As the record demonstrates, the decision not to interview plaintiff effectively operated as a decision not to hire her.[6] Although we do not understand plaintiff to have asserted a freestanding claim for "failure to interview,"[7] Tricore's ultimate hiring decision cannot be viewed in isolation, without consideration of the effects of differential treatment at the interview stage. *See Luna v. City & County of Denver*, 948 F.2d 1144, 1148 (10th Cir. 1991) (holding that employer could not simply rely on its willingness to hire successful candidate without examination of biased interview process). Therefore, evidence that Tricore's stated reasons for failing to give plaintiff an interview may be

---

Aplt.App. at 71 (depo. p. 19) (emphasis added); *See also id.* at 64 (depo. p. 34) (Woolley depo.); *id.* at 75 (depo. p. 37) (Tulenko depo.).

Moreover, in Tricore's answer to plaintiff's charge of discrimination, Tricore stated: "Ms. Danville has *no experience* in the oversight of blood banks in multiple organizations." *Id.* at 85 (emphasis added). For these reasons, we will evaluate the showing of pretext on the basis of "no experience," not "more recent experience."

**6.** Carol Tulenko testified that once plaintiff had been excluded from the interview process, she would have been considered only if the other candidates proved unacceptable. Aplt.App. at 72 (depo. p. 25). Marcia Ash went even further in her testimony:

Q. So, after that April 29th meeting, it's your belief that Ms. Danville still had a shot at this job?

A. It is not my belief that she still had much of a shot at this job, because we felt

that of the four candidates that we were planning to do interviews with, conferencing, that there would be someone that would stand out as the individual that we would like to bring in for on-site interviews and actually make an offer to.

Q. That was established at the April 29th meeting, that not only was Ms. Danville not going to get an interview, but it was unlikely that she would still be considered for the position?

A. Yes, that's correct.

*Id.* at 55 (depo. p. 21).

Plaintiff also testified that after the April 29th meeting, Marcia Ash telephoned her and told her "you did not make the first cut." *Id.* at 31 (depo. p. 37). This evidence also suggests that the interview decision was critical for plaintiff.

**7.** The appendix filed in this court does not include a copy of plaintiff's complaint.

unworthy of belief bears on the pretextual nature of the reasons advanced for its ultimate hiring decision. *Cf. Kline v. TVA*, 128 F.3d 337, 351 (6th Cir.1997) (holding employer's attempt to show that employee ultimately selected was better qualified, based on interview results, was pretextual when African–American plaintiff never even received interview), *limited on other grounds, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### a. Pretextual nature of consideration at committee meeting

There is evidence that the decision not to interview plaintiff was presented as a *fait accompli* to the selection committee. Jimmy Stacy, plaintiff's former supervisor at Presbyterian, testified that an employee in human resources told him, prior to the completion of the selection process, that they had received plaintiff's resume but had already decided that she would not be getting an interview.

Dr. Garner also testified that he felt that plaintiff had simply been ruled out prior to the committee discussion and that there was no point in his trying to get her an interview. This evidence suggests that any discussion occurring at the committee meeting about plaintiff's alleged "abrasiveness" or "lack of qualifications" was mostly *pro forma*. Plaintiff had *already* been rejected. There is no evidence that other highly qualified candidates were treated in like manner. An employer's failure to give more than sham or *pro forma* consideration to a candidate or his or her qualifications, coupled with other circumstantial evidence of discriminatory intent, can demonstrate pretext. *See, e.g., Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 310, 312–14 (2d Cir.1997); *Krodel v. Young*, 748 F.2d 701, 708–09 (D.C.Cir. 1984).

### b. Discriminatory comment

We have already discussed, in the context of direct evidence, the comment Dr. Garner overheard during the selection committee meeting that plaintiff "might not be around very long." Although the comment does not constitute direct evidence of age discrimination sufficient to take the case to a jury, it is circumstantial evidence from which an inference of discriminatory intent might be drawn. *See Fernandes*, 199 F.3d at 588–89.

Tricore characterizes this comment as an isolated, stray, ambiguous remark that is insufficient to show pretext. While the remark may be "ambiguous" in the sense of being susceptible to more than one interpretation, and "isolated" in the sense that it was only made once, this is not a "stray" remark in the sense that it lacks a nexus to the employment decision. The remark referred directly to the plaintiff and was made during the committee meeting at which interview candidates were selected. There was evidence from which a jury could conclude that the remark was intended to explain why plaintiff was not being interviewed. Plaintiff has shown an adequate nexus to the employment decision to treat the remark as evidence of pretext. *See Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir.1996).

### c. Lack of centralized blood banking experience

While Tricore's first asserted nondiscriminatory rationale, Ms. Richards' superior experience with a multi-site, centralized blood bank system, was discussed at the committee meeting, it provides questionable justification for denying plaintiff an interview. When Carol Tulenko subsequently interviewed Ms. Richards on May 29, 1999, she wrote on the Employment Interview Assessment form that Ms. Rich-

ards "[d]oes *not* have experience in centralized BB." Aplt.App. at 71 (depo. pp. 18–19) (emphasis added); *see also id.* at 131. At her deposition, Ms. Tulenko could offer no explanation for this comment. She stated, however, that at the time of the selection committee meeting, she believed that Richards' "experience with the blood bank consolidations in the San Francisco area ... was *equivalent* to centralized blood banking." *Id.* at 71 (depo. p. 20) (emphasis added). It appears, then, that even at the time of the search committee meeting, Tricore may have allowed Ms. Richards' "equivalent experience" to substitute for the centralized, multi-site blood bank experience it claims was so important.

The waters become murkier when we consider Ms. Tulenko's definition of a "centralized blood bank": "a blood bank that provides blood products and services to multiple hospital settings." *Id.* Plaintiff testified that she had experience with managing centralized, multi-site transfusion testing of the kind Tricore was looking for, and that Ms. Richards did not. *Id.* at 32 (depo. pp. 42–44). Jimmy Stacy stated that he believed plaintiff had successful centralized blood bank experience. *Id.* at 137 (depo. p. 15). While it is the employer's understanding of an employee's qualifications that counts, one could draw a reasonable inference that Ms. Richards' qualifications were unreasonably inflated by the committee, while plaintiff's were unreasonably denigrated.

### d. Plaintiff's allegedly deficient management and people skills

There was some evidence that people whom plaintiff had formerly supervised came to Marcia Woolley and complained about plaintiff's abrasive management style. Also, Ms. Woolley testified that there was a sense that plaintiff might have some animosity or negative attitudes about

Tricore, or a lack of loyalty. *Id.* at 62–63 (depo. pp. 29–30). Ms. Woolley admitted that the lack of loyalty might have been based on an assumption. *Id.* at 63 (depo. p. 30). Dr. Garner testified that, to his knowledge, plaintiff's personnel file at Presbyterian did not contain any negative information about her.

We note, first, that traits like "abrasiveness," "animosity," or "lack of loyalty," are subjective rather than objective. While the difference is not dispositive, discrimination is more likely where subjective rather than objective criteria are used to reject a candidate's application. *See, e.g., Heno v. Sprint/United Mgm't Co.,* 208 F.3d 847, 853 (10th Cir.2000).

It should also be noted that the successful candidate, Ms. Richards, suffered from defects arguably equal to those advanced to justify denying plaintiff an interview. Ten years of Ms. Richards' alleged twenty-five years' experience were missing from her resume. Aplt.App. at 73 (depo. pp. 26–27). There was also evidence that Ms. Richards changed jobs frequently, a concern noted by Dr. Foucar, who was not on the committee but had input into the decision.

Dr. Garner testified that he was not happy with Cheryl Richards as a candidate. After the interviews, he felt that she should be hired, but only because she was the only candidate they had left,[8] and "[t]here was a great deal of pressure to not restart the process." *Id.* at 44 (depo. p. 44). Restarting the process, of course, would have given plaintiff another opportunity to compete for the position. The fact that pressure had to be brought to bear to prevent the interview process from restarting might lead a factfinder to infer that certain committee members were de-

---

**8.** The other remaining candidates had de-    clined Tricore's offer of an on-site interview.

termined to exclude plaintiff from serious consideration.

"[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir.2000). While the evidence of pretext pertaining to plaintiff's allegedly abrasive management style is not as strong as that which undermines Tricore's rationale about centralized blood banking experience, when it is considered in light of (1) the allegedly discriminatory comment made at the selection meeting, (2) the decision not even to interview plaintiff, in spite of her classification as a highly qualified candidate, and (3) the evidence that a decision was made informally about plaintiff's candidacy prior to the committee meeting, we believe that plaintiff has shown sufficient evidence of pretext to present her case to a jury.

The judgment of the United States District Court for the District of New Mexico is REVERSED and REMANDED for further proceedings in light of this opinion.