**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK DOKE,

 Plaintiff-Appellant,

v.

PPG INDUSTRIES, INC.,

 Defendant-Appellee.

No. 03-3269

District of Kansas

(D.C. No. 2:02-CV-02191-JWL)

---

**ORDER AND JUDGMENT** *

---

Before **McCONNELL** , Circuit Judge , **McKAY** , Senior Circuit Judge, and **FRIOT** , District Judge. **

---

Plaintiff Mark Doke alleges that his employer fired him because of his age, in violation of the Age Discrimination in Employment Act. Defendant PPG Industries (PPG) asserts that it fired him for violating company policy. To survive summary judgment in this situation, Mr. Doke must come forward with evidence sufficient for a reasonable jury to conclude that PPG's stated reason for the firing

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Stephen P. Friot, United States District Judge for the Western District of Oklahoma, sitting by designation.

was pretextual.  Because he has failed to do so, we AFFIRM the district court's dismissal of his claim on summary judgment.

## I.

Mr. Doke began working for PPG in February of 2000, one month shy of his forty-fifth birthday.  After a few weeks of training at the Shawnee, Kansas store, he took a position as an inside salesman at the Porter Paint store in Stanley, Kansas.  A few months later, in the summer of 2000, Mr. Doke returned to the Shawnee store.  There he worked as an inside salesman until his termination in October 2001, one year and eight months after he started.

In the summer of 2000, PPG distributed a memorandum to all sales employees setting forth its "Hold Ticket Policy."  Apparently, PPG's employees had a practice of allowing customers to take merchandise from the store before entering the transaction into the store's computer system.  The employees would simply record the transaction on a written work order and enter it into the computer at a later time.  The Hold Ticket Policy prohibited this practice, stating that "all sales of merchandise through our stores are to be recorded through the store's [computer system] prior to [the merchandise] leaving the store."  The stated reason for the policy was that it aided proper inventory tracking, proper sales tracking, and accurate customer billing.  Violation of the policy, the memorandum suggested, was grounds for termination.  The memorandum stated:

"We have had some individuals lose their jobs because they decided not to follow this important policy, and this is truly unfortunate as we greatly value our employees!"

In July 2000, PPG held a meeting at the Shawnee store to explain the Hold Ticket Policy. Either at the meeting or shortly thereafter, Mr. Doke, and the other inside sales personnel, signed a copy of the policy, acknowledging their receipt and understanding of it. However, Mr. Doke testified that both before and after signing the Hold Ticket Policy, he frequently violated it by allowing merchandise to leave the store before entering the transaction into the computer system. According to Mr. Doke, he was "just doing what everyone else did." He testified that Doug Schnabel, who began working as Mr. Doke's supervisor in August 2000, told him the policy "wasn't really going to change anything that we were doing in the store," and was "basically something they were doing to CYA."

On October 1, 2001, Mr. Doke violated the Hold Ticket Policy again. Mr. Schnabel found out about the violation the next day when, in Doke's absence, a customer called the store to change his order. Schnabel documented the violation and provided the information to Ron Whitmer, PPG's Operations Manager for the territory including the Shawnee store. A few days later, Schnabel and Whitmer met with Doke to discuss the October 1 transaction. At the meeting, Doke admitted to violating the Hold Ticket Policy. Whitmer then informed him that

3

PPG was suspending his employment for violation of the policy and was considering termination.

Meanwhile, Whitmer informed Human Resources Director Betty Lindsey of Mr. Doke's violation of the Hold Ticket Policy. After consulting with three other members of PPG's upper-level management, Ms. Lindsey decided to terminate Mr. Doke's employment. On October 8, Mr. Whitmer informed Mr. Doke that PPG was terminating his employment based on his admitted violation of the Hold Ticket Policy. When PPG denied Doke's request for reconsideration, he filed this lawsuit.

## II.

Mr. Doke claims that PPG fired him because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq*. Because Mr. Doke has offered no direct evidence of age discrimination, we evaluate his claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, first, the plaintiff must establish a prima facie case of age discrimination by showing that (1) he is within the protected age group; (2) his work performance was satisfactory; (3) his employment was terminated; and (4) his position was filled by a younger person. *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory

reason for the termination decision.    *Id.*   Once the employer has done so, the plaintiff may resist summary judgment by presenting evidence either that the employer's stated reason is a pretext or that the termination decision was motivated by age discrimination.    *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002).   The parties agree that Mr. Doke has established a prima facie case and that PPG has articulated a nondiscriminatory reason for the termination decision.  Mr. Doke has offered no evidence that the decision was motivated by age discrimination.  Therefore, our inquiry is limited to whether Mr. Doke has presented sufficient evidence of pretext to survive summary judgment.

Pretext may be shown " by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.*  Typically, a plaintiff attempts to demonstrate pretext in one or more of three ways:     "(1) with evidence that the defendant's stated reason for the adverse employment action was false, (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the

5

plaintiff." *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (internal citations omitted). When attempting to make the third type of showing—that an employer acted contrary to an unwritten policy or company practice—the plaintiff usually provides "evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Id.*

We review the district court's grant of summary judgment on this issue de novo. *Danville*, 292 F.3d at 1249. Summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we must consider the evidence as a whole and draw all reasonable inferences therefrom in favor of the nonmoving party. *Danville*, 292 F.3d at 1249.

### III.

Mr. Doke presents a variety of evidence that he thinks demonstrates pretext. Most of the evidence does not tend to show pretext at all; that which does provides an insufficient basis for a jury to find in his favor.

First, Mr. Doke points to his own testimony that his supervisor, Mr. Schnabel, and his fellow salesman, Bryan Kempf, frequently violated the Hold Ticket Policy and were never disciplined. This, according to Doke, shows that the Hold Ticket policy was not the real reason for his termination.

However, this evidence fails to support an inference of pretext because Mr. Doke is not similarly situated to Schnabel and Kempf. In order to demonstrate pretext, Mr. Doke needs to show not just that other employees violated the Hold Ticket Policy and were not disciplined; he also needs to show that he was similarly situated to those employees—meaning, in this context, that those who made the termination decision had evidence of Schnabel's and Kempf's violations comparable to the evidence on Doke. Otherwise the evidence just tends to show that his fellow sales employees were better at escaping detection than he was, not that the relevant decision-makers were discriminating against him.

Mr. Doke has failed to make any such showing. Management had independent evidence of Doke's violation (a customer phone call documented by Schnabel) and a confession by Mr. Doke himself. In contrast, Schnabel and Kempf have staunchly denied violating the Hold Ticket Policy; and when management investigated Doke's only concrete allegation, which implicated Schnabel, it concluded that Schnabel had not violated the policy at all. Thus, the only evidence management had of Mr. Schnabel's and Mr. Kempf's violations consisted of post-termination allegations by a disgruntled Mr. Doke. Differential treatment under these circumstances is not evidence of pretext. *See Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1182 (10th Cir. 2002) (employer's response to "unsubstantiated claims" of wrongdoing was "legally

7

irrelevant" when compared with the response to proven wrongdoing); *Watts v. City of Norman*, 270 F.3d 1288, 1296 (10th Cir. 2001) (employees were not similarly situated when there was "corroborating evidence in [one] case and the absence of such evidence in [the other]").

Next, Mr. Doke points to his own testimony that Messrs. Schnabel and Kempf consumed alcohol on store premises after business hours but were not fired. According to Doke, the company policy against consuming alcohol on store premises is comparable to the Hold Ticket Policy; and the fact that Schnabel and Kempf violated it with impunity demonstrates that Doke's violation of the Hold Ticket Policy could not have been the real reason for his termination. Again, however, Mr. Doke fails to show that management had any evidence, aside from his own unsubstantiated allegations, that Schnabel and Kempf violated company policy. Therefore Mr. Doke was not similarly situated to Messrs. Schnabel and Kempf; and the fact that they were not fired for allegedly drinking on store premises is not evidence of pretext.

Mr. Doke also complains that Mr. Schnabel, who is one year and ten months Mr. Doke's junior, repeatedly called Mr. Doke "old fart" and "old geezer." But as we have noted before, " age-related comments by non-decisionmakers are not material in showing the [defendant's] action was based on age discrimination." *Minshall v. McGraw Hill Broad. Co., Inc.*, 323 F.3d 1273, 1287 (10th Cir. 2003).

8

There is no evidence that Mr. Schnabel participated in or influenced the decision to terminate Mr. Doke's employment. His age-related comments, then, are not evidence of pretext on the part of the employer.

Also not evidence of pretext are Mr. Schnabel's comments that the Hold Ticket Policy "wasn't really going to change anything that we were doing in the store," and was "basically something they were doing to CYA." There is no evidence that Mr. Schnabel was expressing the views of Ms. Lindsey or the other managers who participated in the termination decision. To the contrary, before Schnabel began working as Doke's supervisor, PPG held a meeting at the Shawnee store explaining the Hold Ticket Policy, and Doke and the other employees were required to sign a memorandum stating that some employees had been fired for violating the policy. Mr. Schnabel's comments are not evidence that the Hold Ticket Policy was unimportant to management.

Finally, Mr. Doke argues that PPG violated its three-step disciplinary policy by failing to give him a written warning before terminating his employment. There is conflicting evidence on this point. Mr. Whitmer, the Operations Manager for the territory including the Shawnee store, testified that PPG has a three-step disciplinary policy: the first step is a verbal warning, the second step a written warning, and the third step termination. Mr. Doke claims he never received a written warning until after he was terminated, and therefore the stated reason for

his firing must be pretextual.  In contrast, both Mr. Whitmer and Mr. Schnabel maintain that Mr. Doke received a written warning.  Furthermore, PPG's Employee Handbook states that "[t]his procedure will be used[] at the Company's discretion," which suggests that it is not an invariable policy.

Although this evidence raises doubts about whether PPG failed to follow the three-step disciplinary policy and whether the policy was even applicable, we must resolve these doubts in Mr. Doke's favor on summary judgment.  Even when we do, however, this evidence is insufficient to support an inference of pretext. The absence of a written warning is the only evidence of pretext Mr. Doke has offered.  No reasonable jury could conclude, solely on this basis, that PPG's asserted reason for the firing was "unworthy of belief."      *Danville*, 292 F.3d at 1250; *see also  Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) ("The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'").  Summary judgment was therefore appropriate.

IV.

For the foregoing reasons, we    **AFFIRM**  the district court's grant of summary judgment.

Entered for the Court

Michael W. McConnell
Circuit Judge

10