**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NORVELL BUFFORD,

      Plaintiff-Appellant,

  v.

THE BOEING COMPANY,

      Defendant-Appellee.

No. 06-3170
(D.C. No. 04-CV-1334-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **KELLY** and **O'BRIEN**, Circuit Judges.

Plaintiff-appellant Norvell Bufford appeals the district court's grant of

summary judgment to his former employer, defendant-appellee The Boeing

Company, on his claim that Boeing demoted him from a management position to a

non-management position because of his race in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Exercising jurisdiction

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

under 28 U.S.C. § 1291, we affirm the entry of summary judgment in favor of Boeing.

**A. Background.**

Mr. Bufford is an African-American male. Mr. Bufford worked for Boeing at its commercial facility in Wichita, Kansas from 1980 until June 2005 when he was terminated in connection with Boeing's sale of the assets of its Wichita facility. Mr. Bufford is not challenging his termination in this action. Instead, he alleges that Boeing discriminated against him because of his race in March 2004 when his direct supervisor, Harold Peterson, who is also an African-American, demoted him from his management position in the transportation department at the Wichita facility to a non-management position at the same facility.[1]

As set forth in the district court's memorandum and order granting Boeing summary judgment, Peterson's proffered reason for demoting Mr. Bufford was his belief "that [Mr. Bufford] had not followed his instructions to properly instruct his crew on [Boeing's] radio use policy, and that [Mr. Bufford] was not honest about it when Peterson questioned him." *See Bufford v. Boeing Commercial Airplane Group–Wichita Div.*, 425 F. Supp. 2d 1241, 1247 (D. Kan. 2006). Mr. Bufford claims, however, that Peterson's actual motivation for demoting him

---

[1] In his amended complaint, plaintiff also asserted additional race and age discrimination claims. Plaintiff abandoned his additional claims in the pretrial order that was entered in the district court proceedings.

was his race.  Specifically, he claims that "Peterson . . . had received pressure from [his superiors] to demote Bufford because Peterson was perceived to have been too lenient with Bufford as they are both African American." Aplt. Opening Br. at 3.

The district court rejected Mr. Bufford's claim that his demotion was racially motivated, as the court concluded that "there is no direct or circumstantial evidence of racial discrimination." *Bufford*, 425 F. Supp. 2d at 1248.  Although some of our reasoning is slightly different than the district court's, we agree with the district court that Mr. Bufford failed to put forth sufficient evidence to support his racial discrimination claim, and we therefore affirm the entry of summary judgment in favor of Boeing.  We also commend the district court for its thoroughness in setting forth the factual background pertaining to Mr. Bufford's discrimination claim, and we will not repeat that detailed background here.  *Id.* at 1243-48.  Instead, we will assume a working familiarity with the detailed facts set forth by the district court pertaining to the following categories of evidence: (1) Mr. Bufford's work history at Boeing, *id.* at 1243-44; (2) Mr. Bufford's previous discipline, *id.* at 1244; (3) Mr. Bufford's conduct related to the January 31, 2004 "restroom incident" and the discipline that Peterson imposed on Mr. Bufford in connection with that incident, *id.* at 1244-45; (4) Mr. Bufford's conduct related to the February 2004 "radio incident" and Peterson's investigation concerning radio use in the transportation

department, *id.* at 1246-47; (5) Mr. Bufford's demotion from management as a result of the radio use issue, *id.* at 1247-48; and (6) Mr. Bufford's administrative charge and this lawsuit, *id.* at 1248.

**B.  Summary Judgment Standards.**

"We review a district court's grant of summary judgment de novo, applying the same legal standards used below." *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1257 (10th Cir. 2006).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Burke*, 462 F.3d at 1258 (quotation omitted).

**C.  Legal Framework for Analyzing Discrimination Claims.**

The district court correctly summarized the legal framework that governs this case:

> "A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination . . . or indirect (i.e., circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  In cases of circumstantial evidence of discriminatory intent under Title VII, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973).  Pursuant to the *McDonnell Douglas* framework, the employee "must carry the initial burden . . . of

-4-

establishing a prima facie case of racial discrimination." *Kendrick*, 220 F.3d [at 1226] (quotation marks and citation omitted). . . .

Once the employee establishes a prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action." [*McDonnell Douglas*, 411 U.S. at 802] (quotation marks and citation omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999). If the employer satisfies its burden of production, the employee must then show that the employer's justification is pretextual – i.e., unworthy of belief. *See Kendrick*, 220 F.3d at 1226, 1230. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 . . . (2000).

*Bufford*, 425 F. Supp. 2d at 1248-49 (alterations added to case citations).

Here, Boeing does not dispute that Mr. Bufford established a prima face case of racial discrimination based on his demotion to a non-management position. Likewise, Mr. Bufford does not dispute that Boeing articulated a legitimate, nondiscriminatory reason for the demotion. Accordingly, we will focus exclusively on the issue of pretext, and the summary judgment issue in "this case hinges upon whether [Mr. Bufford] has put forth sufficient evidence establishing a dispute of fact as to whether [Boeing's] stated reason for [demoting him] was pretextual." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005).

"Under Tenth Circuit precedent, pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* Thus, "[a] plaintiff can make a showing of pretext with evidence that the defendant's stated reason for [taking an employment action] was false." *Id.* (quotation omitted). In analyzing the issue of pretext, however, we must "look at the facts as they appear to the person making the decision to [take the employment action]." *Kendrick*, 220 F.3d at 1231. In addition, we have recognized that "a mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual." *Id.* (quotation omitted). As we have explained, "[t]he reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

**D. Analysis.**

In his opening brief, Mr. Bufford summarizes his arguments as to why the district court's grant of summary judgment to Boeing was improper as follows:

> Bufford presented four key pieces of evidence that should have precluded the entry of summary judgment: (1) Bufford's conversation with Peterson in which Peterson revealed that despite the official

reason being radio use, the real reason for demotion was that Peterson was feeling pressure to demote Bufford to silence critics that thought he had been to lenient on Bufford because of his race; (2) employees' demonstrated hostility because they perceived Peterson did not sufficiently punish a fellow African American; (3) the dissemination of information concerning the Restroom Incident in violation of Boeing's policy to the contrary; and (4) that Peterson's explanation for the demotion lacked credibility when viewed in context and considering that no other manager has ever been disciplined for insufficient training on radio use.

Aplt. Opening Br. at 8. Having conducted a de novo review of the summary judgment record that was before the district court, and having viewed that record in the light most favorable to Mr. Bufford, we conclude that the evidence cited by Mr. Bufford is insufficient to create a genuine issue of material fact for trial on the issue of pretext.

With regard to the conversation that Mr. Bufford alleges he had with Peterson on the day he was demoted, Mr. Bufford testified about the conversation at his deposition. According to Mr. Bufford, during the conversation, Peterson informed Mr. Bufford about statements that had been made to him by two of his superiors, Jim Urso and Kerry Crisp. Mr. Bufford's deposition testimony was as follows:

Q Let's talk about the second [Corrective Action Memo] and the demotion.

A Okay.

Q Who is it that you believe made the decision?

A Harold Peterson.

Q  He's the one who made that decision, just him?

A  Yeah.

Q  Okay.  Do you believe that decision – do you believe that Mr. Peterson was motivated to make that decision because of your race?

A  Yes.

Q  Why do you believe that?

A  Because of all the pressure and all the things I mentioned happened in the first issuance of the [Corrective Action Memo for the restroom incident], that in retaliation he made this decision because he's African American and Jim Urso and Kerry Crisp, H – head of HR, had had conversations and laughed at [Peterson] about it and even made comments to the effect, Kerry Crisp told Jim Urso that [Peterson] had a chance to fire me and he was chicken, while I was gone.

Q  Okay.  How do you know about that conversation?

A  Harold Peterson told me.

Q  Okay.  When did Mr. Peterson tell you that?

A  When he issued [the second Corrective Action Memo related to the radio use issue].

. . . .

Q   All right.  Tell me again exactly what [Peterson] said to the best you can remember it.

A  He told me that, in fact, that Kerry Crisp, my mentor, had told Jim Urso that [Peterson] was chicken shit and he had a chance to fire me and didn't do it.

Q  What was Mr. Peterson's source of that information?

A  Jim Urso.

Q  So Mr. Peterson was telling you what Mr. Urso told him that Kerry Crisp had told him?

A  Yes.

Q  Okay.

A  Because Mr. Peterson was saying that they wanted to fire me, is what they wanted to do, and based on what.  Again, retaliation from the Clara Baker deal, the bathroom incident.  So all those things go back to the discrimination, retaliation for whatever reason.  And I'm saying because I'm black and I am the – one of the few in his organization and they sens – sensationalized this little incident into being a fabricated mess.

Q  Which incident, the restroom incident?

A  The restroom incident, yes.

Aplt. App. at 99-100 (Bufford Depo. at 192-95).

We agree with the district court that, even if true and fully admissible from an evidentiary standpoint, Mr. Bufford's conversation with Peterson falls well short of establishing a basis for a jury to find direct evidence of racial discrimination.  Most importantly, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons," *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002), and there is not a single reference to Mr. Bufford's race in any of the statements that Peterson, Urso, and Crisp allegedly made.  Instead, the only references to race were made by Mr. Bufford himself, and it is well established that an employee's "subjective

belief of discrimination is not sufficient to preclude summary judgment."
*Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997).

We also agree with the district court that Mr. Bufford's conversation with Peterson is insufficient to create a genuine issue of material fact for trial on the question of pretext. We disagree with the district court's reasoning on this point, however.

As set forth in its memorandum and order, the district court concluded that the alleged conversation with Peterson was insufficient to create a jury question on the issue of pretext because "this evidence is inconclusive as to whether race was a motivating factor [in Mr. Bufford's demotion]. Plaintiff's own testimony appears to indicate that it was the nature of the bathroom incident and the search of Clara Baker that motivated the demotion, rather than his race." *Bufford*, 425 F. Supp. 2d at 1250. This reasoning is faulty because Mr. Bufford is not required to put forth evidence showing that race was a motivating factor in his demotion to survive summary judgment on the question of pretext. *See Bryant*, 432 F.3d at 1125. That said, we do not believe a rational jury could conclude, based on Mr. Bufford's alleged conversation with Peterson, that Peterson's proffered legitimate, nondiscriminatory reason for demoting Mr. Bufford to a non-management position (i.e., the radio use issue) was false. At best, the conversation with Peterson establishes only that Peterson had been criticized by his superiors for failing to fire Mr. Bufford due to his prior conduct related to the

bathroom incident, and we do not believe this evidence casts any probative doubt on Peterson's good faith in the context of the radio use issue.

Moreover, even if we were to conclude that the conversation with Peterson could be construed as calling into question the veracity of the proffered reason for Mr. Bufford's demotion, this evidence "create[s] only a weak issue of fact as to whether [Peterson's] reason was untrue and there was abundant and uncontroverted independent evidence that no [racial] discrimination had occurred." *Reeves*, 530 U.S. at 148. As a result, despite the arguable factual issue, we believe that "no rational factfinder could conclude that the [demotion] was discriminatory," *id.*, and Boeing was therefore "entitled to judgment as a matter of law" on the question of pretext, *id.*[2]

We also reject Mr. Bufford's argument that summary judgment in favor of Boeing was improper because there is evidence showing that: (1) other employees at the Wichita facility were upset because they believed that Peterson did not sufficiently punish a fellow African-American; and (2) information concerning the restroom incident was disseminated throughout Boeing's Wichita facility. *See* Aplt. Opening Br. at 8. First, although Mr. Bufford testified at his deposition that

[2]    In *Reeves*, the Supreme Court was addressing motions for judgment as a matter of law under Fed. R. Civ. P. 50. *Reeves*, 530 U.S. at 148. The Court's reasoning is equally applicable here, however, because the standard for summary judgment under Fed. R. Civ. P. 56(c) "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

he found "signs" in his work area "talking about [how] Harold Peterson and Norvell Bufford, because they're black, don't have to comply with the Boeing code of conduct," Aplt. App. at 100 (Bufford Depo. at 196), this evidence is insufficient to establish pretext with respect to Peterson's demotion decision. "A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement[s] and the company's [employment] decision," *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000), and Mr. Bufford has failed to establish such a nexus here. In fact, there is no evidence in the record showing that Peterson was aware of the signs at the time he demoted Mr. Bufford. Further, "[discriminatory] comments by non-decisionmakers are not material in showing [Boeing's] action was based on . . . discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

Second, Mr. Bufford claims that "[r]umors of the Restroom Incident flooded the workplace despite Boeing's policy that the matter be confidential." Aplt. Opening Br. at 4. According to Mr. Bufford, the "rumors . . . detail[ed] Peterson's alleged lenience towards Bufford on account of his race," *id.* at 19, and he argues that "[t]his evidence of hostility calls into question Peterson's stated reasons for the demotion," *id.* This argument is without merit, however, because, while several Boeing employees testified at their depositions that they heard rumors in the workplace about the restroom incident, none of the witnesses

-12-

testified that the rumors had anything to do with Mr. Bufford's race. *See* Aplt. App. at 259 (Moroney Depo. at 64-65); *id.* at 115 (Boswell Depo. at 99); *id.* at 155 (Urso Depo. at 96-97). In addition, while Mr. Bufford testified at his deposition that an employee who worked with him in the transportation department "had made racial comments about [him] and Peterson and that they were going to get these black boys and they were going to make sure that something happened, because we were just going to sweep [the restroom incident] under the rug," *id.* at 98 (Bufford Depo. at 184-85), there is no evidence in the record showing any sort of nexus between this alleged statement and Peterson's demotion decision.

Finally, we decline to address Mr. Bufford's conclusory assertion "that Peterson's explanation for the demotion lacked credibility . . . considering that no other manager has ever been disciplined for insufficient training on radio use." Aplt. Opening Br. at 8. Mr. Bufford has failed to cite to the parts of the record that support this allegation, and his entire argument consists of a single sentence in his opening brief. *Id.* He has therefore failed to adequately raise this issue for purposes of this appeal. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."); *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed."); Fed. R. App. P. 28(a)(9)(A) ("[Appellant's]

argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

The judgment of the district court is AFFIRMED.

Entered for the Court

Deanell R. Tacha
Chief Circuit Judge