**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ANJELA GREER,

     Plaintiff - Appellant,

v.

CITY OF WICHITA, KANSAS,
WICHITA ART MUSEUM, INC.,
and PATRICIA McDONNELL,

     Defendants - Appellees.

No. 18-3159

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:16-CV-01185-EFM)**

_____

Susan R. Schrag, Attorney at Law, Clearwater, Kansas (Donald N.
Peterson, II, Sean M. McGivern, Graybill & Hazlewood, Wichita, Kansas,
with her on the briefs), for Plaintiff-Appellant.

Jennifer M. Hill, McDonald Tinker, Wichita, Kansas, for Defendant-
Appellee City of Wichita.

Rachel N. Wetta, Foulston Siefkin, Wichita, Kansas, for Defendants-
Appellees Wichita Art Museum and Patricia McDonnell.

_____

Before **BACHARACH, McHUGH,** and **EID**, Circuit
Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves a claim under the Uniformed Services Employment and Reemployment Rights Act, which prohibits employers from denying promotions because of an employee's military service. The claim is brought by Ms. Anjela Greer, an employee for the City of Wichita who worked at the Wichita Art Museum. She applied for a promotion but didn't get an interview.

She sued the City, the Wichita Art Museum, and the museum's executive director, alleging that they had disallowed an interview because of Ms. Greer's simultaneous military service. The district court granted summary judgment to the defendants on two grounds: (1) Any reasonable factfinder would determine that the defendants had declined to advance Ms. Greer to the interview stage because her application showed a lack of supervisory experience, and (2) the defendants had proven that they wouldn't have advanced Ms. Greer to an interview regardless of her military status.

We reject both grounds. The first ground is invalid because a factfinder could reasonably infer that Ms. Greer's military status was a motivating factor in the defendants' denial of an interview. The second ground is also invalid because a factfinder could reasonably find that Ms. Greer would have obtained an interview if she had not been serving in the

military. We thus reverse the grant of summary judgment to the defendants.

## I.    The Denial of an Interview

Ms. Greer simultaneously served in the Navy Reserves and worked as a security guard at the Wichita Art Museum. After about five years as a security guard, Ms. Greer learned of a vacancy for the museum's "Operations Supervisor." She and one other person applied. A city employee, Ms. Olivia Hensley, screened the applications and decided not to advance Ms. Greer to the next stage, where she would have been interviewed.

That decision sparked this suit. Ms. Hensley attributes the denial of an interview to Ms. Greer's lack of qualifications. The new job required at least one year of prior supervisory work in particular fields. *See* Part IV(A)(2)(b), below. In light of this requirement, the application called for Ms. Greer to state how many people she supervised. She answered "2," but identified her job title only as "Security" and didn't list any supervisory duties. Based on the job title and the absence of any listed supervisory duties, Ms. Hensley testified that Ms. Greer's application had shown a lack of supervisory experience.

Ms. Greer disagrees with this explanation, contending that Ms. Hensley was actually following instructions from Dr. Patricia McDonnell, who was the museum's executive director. According to Ms. Greer, Dr.

3

McDonnell harbored anti-military animus and blocked any promotions for Ms. Greer while she remained in the military.

## II. Summary-Judgment Standard

We engage in de novo review of the district court's summary-judgment ruling, applying the same standard that applied in district court. *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016). Under that standard, the district court must view the evidence and all reasonable inferences favorably to Ms. Greer. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Viewing the evidence and inferences in this light, the court could grant summary judgment to the defendants only in the absence of a "genuine dispute as to any material fact" and the defendants' showing of an entitlement "to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. Burden-Shifting Framework

Under the Uniformed Services Employment and Reemployment Rights Act, the burden of proof shifts based on whether the court is considering an aggrieved employee's prima facie case or an employer's affirmative defense.

For a prima facie case, aggrieved employees must prove that their military membership constituted "a motivating factor" in the denial of a promotion. 38 U.S.C. § 4311(c)(1). This burden is satisfied if military membership is one of the reasons for denying the promotion. *Bradberry v.*

4

*Jefferson Cty.*, 732 F.3d 540, 545 (5th Cir. 2013); *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005).

If an aggrieved employee shows that military membership is one of the reasons for denying a promotion, the employer may invoke the "same action defense." *See* 38 U.S.C. § 4311(c)(1). Under this defense, the employer must prove that it would have taken the same action even if the employee had not been in the military. *See Bradberry v. Jefferson Cty.*, 732 F.3d 540, 547 (5th Cir. 2013) (employer's burden); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001) (nature of the burden).

## IV. Material Factual Disputes[1]

Ms. Greer argues that Dr. McDonnell's anti-military animus constituted a motivating factor in Ms. Hensley's decision not to advance her application to the interview stage. This argument implicates the cat's paw doctrine. Under this doctrine, an employer can incur liability for the anti-military animus of supervisors even if they do not actually make the

---

[1]    In district court, Dr. McDonnell and the Wichita Art Museum also denied that they are proper defendants under the Act, arguing that they were not Ms. Greer's employers. The district court did not rule on this argument, but Dr. McDonnell and the Wichita Art Museum assert this ground as an alternative ground for affirmance. Despite this assertion, the parties have not briefed this issue in the appeal. We thus leave this issue for the district court to decide in the first instance. *See Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 649 (10th Cir. 2017) (stating that when the district court did not rule on an argument, the better practice is to let the district court decide the issue in the first instance), *cert. denied*, ___ U.S. ___, 138 S. Ct. 364 (2017).

employment decision. *Staub v. Proctor Hosp.*, 562 U.S. 411, 419–20 (2011). To invoke this doctrine, the applicant must show that the supervisor's anti-military animus influenced the decision. *Id.*

We thus consider three issues:

1.    Could a factfinder reasonably infer anti-military animus by Dr. McDonnell?

2.    Could a factfinder reasonably conclude that Dr. McDonnell's anti-military animus had been a motivating factor in Ms. Hensley's denial of an interview to Ms. Greer?

3.    Did the defendants satisfy the same-action defense, as a matter of law, by proving that Ms. Hensley would have disallowed an interview even if Ms. Greer had not been serving in the military?

In our view, Ms. Greer has raised a genuine dispute of material fact on each issue.

## A.    Ms. Greer's Prima Facie Case

For a prima facie case, Ms. Greer bore the burden of proving that (1) Dr. McDonnell had harbored anti-military animus and (2) this animus had constituted a factor motivating Ms. Hensley to disallow an interview. *See* Part III, above. Material factual disputes exist on both issues.

### 1.    Dr. McDonnell's Anti-Military Animus

The district court assumed without deciding that a reasonable factfinder could find anti-military animus. Rather than draw an assumption, we decide the issue, concluding that a reasonable factfinder could determine that Dr. McDonnell had anti-military animus.

6

Anti-military animus can be proven through negative statements about an employee's military status. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001) ("Discriminatory motivation under the [Uniformed Services Employment and Reemployment Rights Act] may be reasonably inferred from a variety of factors, including . . . an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity."); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 414 (2011) (concluding that anti-military animus could exist when the supervisor had called the employee's military obligations "a b[u]nch of smoking and joking and [a] waste of taxpayers['] money" (alterations in original)).

Ms. Greer thus showed Dr. McDonnell's anti-military animus based on her prior statements. For example, Ms. Greer testified about frequent comments disparaging her military service. One of these alleged incidents took place when Ms. Greer said that she needed to attend her annual two-week reserve training. Dr. McDonnell allegedly responded: "[C]an't they reschedule that? Don't they know you have a real job?" Appellant's App'x, vol. I, at 106–07. And when a security guard slammed a door into Ms. Greer's shoulder, Dr. McDonnell reportedly admonished Ms. Greer: "[B]eing [in the] military, I figured you would be able to handle it." *Id.* at 133.

7

According to Ms. Greer, Dr. McDonnell also declared that Ms. Greer could never get a promotion as long as she remained in the military. An example took place when Ms. Greer expressed an interest in the position of "Weekend Supervisor." According to Ms. Greer, Dr. McDonnell responded: "[Y]ou're still in the military, military thing, the crap, whatever . . . . [Y]ou're not going to be considered or promoted or you're not going to do anything here." *Id.*

Responding to these incidents, the defendants argue that (1) isolated statements cannot show anti-military animus and (2) Dr. McDonnell's statements were isolated and referred only to Ms. Greer's unavailability for work during her reserve unit's drill weekends. We disagree because Dr. McDonnell's comments bore directly on the disputed employment decision.

Anti-military comments can show anti-military animus when they are directed at the plaintiff or her effort to obtain a promotion. *Stover v. Martinez*, 382 F.3d 1064, 1078 (10th Cir. 2004). And Dr. McDonnell's statements referred specifically to Ms. Greer and her inability to get a promotion. For example, Ms. Greer testified that Dr. McDonnell had repeatedly remarked that Ms. Greer would not get a promotion as long as she remained in the military. Remarks like these suggest that Dr. McDonnell had anti-military animus even if that animus stemmed from a concern over Ms. Greer's availability during drill weekends. *See Erickson*

8

*v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009).[2] A reasonable factfinder could thus infer anti-military animus by Dr. McDonnell.

The defendants repeatedly downplay Ms. Greer's testimony as "self-serving." But virtually any party's testimony can be considered "self-serving," and self-serving testimony is competent to oppose summary judgment. *See Sanchez v. Vilsack*, 695 F.3d 1174, 1180 n.4 (10th Cir. 2012) (stating that an affidavit resting on personal knowledge and setting forth admissible facts "is legally competent to oppose summary judgment, irrespective of its self-serving nature"). Even standing alone, self-serving testimony can suffice to prevent summary judgment. *See Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1309 (10th Cir. 2007) (concluding that the plaintiff's testimony was sufficient to defeat summary judgment); *accord Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried . . . the misconception that uncorroborated

---

[2]     In *Erickson*, the Federal Circuit stated:

> The most significant—and predictable—consequence of reserve service with respect to the employer is that the employee is absent to perform that service. To permit an employer to fire an employee because of his military absence would eviscerate the protections afforded by the [Uniformed Services Employment and Reemployment Rights Act], the overarching goal of which is to prevent those who serve in the uniformed services from being disadvantaged by virtue of performing their military obligations.

571 F.3d at 1368.

testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'"). So irrespective of the self-serving nature of Ms. Greer's testimony, it creates a genuine factual dispute on Dr. McDonnell's anti-military animus.

### 2.     A Motivating Factor in Denying Ms. Greer an Interview

For a prima facie case, Ms. Greer must also show that Dr. McDonnell's anti-military animus constituted a motivating factor in Ms. Hensley's denial of an interview to Ms. Greer. *See* Part III, above. The district court concluded that Ms. Greer had not satisfied this burden. In our view, however, this issue involves a genuine dispute of material fact.

### a.     Dr. McDonnell's Anti-Military Animus

Dr. McDonnell's anti-military animus would constitute a motivating factor if it influenced Ms. Hensley's decision to disallow an interview. *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005). The existence of other innocent motivations would not have been fatal. *Bradberry v. Jefferson Cty.*, 732 F.3d 540, 545 (5th Cir. 2013); *Coffman*, 411 F.3d at 1238.

In our view, a reasonable factfinder could infer that Dr. McDonnell's anti-military animus had influenced Ms. Hensley's decision. For example, a factfinder could reasonably consider what had happened after Ms. Hensley announced her decision. According to Ms. Greer, she confronted

10

Ms. Hensley and pressed for an explanation. In response, Ms. Hensley pinned the blame on pressure from Dr. McDonnell:

> [Y]ou don't know Patricia McDonnell (indicating), you do not know her. You don't know. She comes up here to HR, up here, and she is a tyrant. I'm like, a tyrant? I'm still not sure what a tyrant is, but she said Patricia's a tyrant and she's throwing fits. And she makes all of them scared. Why? And she says, well, she wants you right where you are. So with that being done, you're not going to have -- you're not going to go anywhere. And those is my instructions from her and that's why -- that's -- you can put in all the applications you want.

Appellant's App'x, vol. II, at 551.

The defendants downplay this testimony, asserting that Dr. McDonnell didn't review Ms. Greer's application until after Ms. Hensley had made her decision.[3] But even if Dr. McDonnell did not know about this particular application, there was evidence that

- she had previously instructed Ms. Hensley to leave Ms. Greer "right where [she was]" and

- Ms. Hensley had attributed her decision to the instruction from Dr. McDonnell.

*Id.* Given this evidence, a factfinder could reasonably infer that Dr. McDonnell had squashed any future promotions for Ms. Greer.

---

[3] Ms. Greer also argues that a reasonable factfinder could infer that Dr. McDonnell had known that Ms. Greer would apply for the job of Operations Supervisor. But we need not address this argument.

### b. Ms. Greer's Supervisory Experience

The district court concluded that Ms. Hensley had found Ms. Greer ineligible for an interview based on her apparent lack of qualifications, not Dr. McDonnell's anti-military animus. The new position required at least one year's supervisory experience in a museum, security environment, or law-enforcement field. *See* Part I, above.

The parties disagree on whether Ms. Greer met this requirement. According to Ms. Greer, she had served as the museum's security supervisor in charge of the second shift.[4] As supervisor, she had allegedly created schedules, scheduled police officers for events, drafted incident reports, allowed guards to leave early, provided "teaching moments" to other guards, and provided oversight. The defendants argue that Ms. Greer might have been a "shift lead," but was never a supervisor.

Given this factual disagreement, the district court had to determine whether a factfinder could reasonably find that Ms. Greer's application had shown supervisory experience. If the factfinder could not reasonably find that the application showed supervisory experience, Dr. McDonnell's anti-

---

[4] Ms. Greer also argues that she had other supervisory experience outside the museum, including supervisory experience in the military. But she did not include this supervisory experience in the application, and Ms. Greer's military experience arguably didn't involve work in a museum, security, or law-enforcement environment. We thus assume, for the sake of argument, that Ms. Greer's supervisory experience in the military would not affect the availability of summary judgment.

12

military animus might not have constituted a motivating factor in Ms. Hensley's decision.

Ms. Greer argues that her application satisfied the job qualifications because she answered "2" for the number of employees supervised. But when describing her job duties, Ms. Greer did not identify any supervisory tasks:

> Monitors security of property, art works on display. Against theft, fires, and vandalism. Inventory artwork daily and hourly per shift. Able to recognize and report needed repairs to supervisor. Monitor security systems alarms and conditions. Develop and maintain a working relationship with all associates including the public. To communicate clearly and effectively, in person and in writing. Be able to run if needed too [sic]. Move quickly.

Appellant's App'x, vol. II, at 327. In addition, Ms. Greer listed her position title as "Security," which did not suggest a supervisory role.[5] On the face of her application, Ms. Greer's supervisory experience was ambiguous.

We thus focus on the evidence describing how the City treated applications bearing ambiguities on the applicant's qualifications. In our view, this evidence creates a genuine factual dispute on the scope of Ms.

---

[5]    In the application, Ms. Greer stated that her duties included reporting needed repairs to a supervisor. In oral argument, the defendants argued that this duty shows that Ms. Greer was not a supervisor. We reject this argument because Ms. Greer could have been a mid-level supervisor, overseeing some employees and reporting to others.

13

Hensley's discretion to advance the application to the interview stage even if the application had been ambiguous.

City personnel testified that they compare the number of individuals being supervised with the applicant's job title and job duties. If the applicant's duties do not match the number of people supervised, city personnel stated that they consider the individual a "shift lead" rather than a supervisor.

But a factfinder could reasonably reject this testimony, for city personnel (Ms. Lisa White and Ms. Susan Leiker) indicated that the Human Resources Department could treat experience as supervisory if an applicant had indicated the number of people supervised without listing supervisory duties.

For example, Ms. White testified:

Q.    And how do you know if the application meets [the job] requirements? Because of the words on the application?

A.    That's exactly right.

Q.    So if, for instance, Anjela Greer says she has supervised two people in her job, as in her existing job with the art museum, that should be taken as supervisory experience?

A.    Possibly, yes.

. . . .

Q.    I am wondering, we were talking earlier about the words on the application versus the words on the job description. And I thought we had established that if there is a match, then the application is supposed to go through for the interview process

14

so that if there are questions, if there are discrepancies or things that need to be explained, that's what the interview process is for; true?

A.   That would be correct.

Q.   So if Olivia [Hensley] had felt like it, she could have sent the application on and left it up to the interview process. If Patricia [McDonnell] is concerned about what Olivia perceives is a discrepancy, Patricia can ask her about it; true?

A.   That could have occurred; however, apparently Olivia looked at the duties as described by Anjela and found that the duties did not match supervision.

Q.   Or Olivia had Patricia leaning on her and decided she's just not going to clear that application no matter what.

. . . .

Q.   As long as we're speculating about why Olivia did what she did, that would be another explanation; would it not?

A.   I can't say about that. I have no idea.

Appellant's App'x, vol. II, at 320; Appellant's App'x, vol. IV, at 1006.

Given this testimony, a factfinder could reasonably infer that Ms. Hensley had the discretion to consider Ms. Greer's experience as supervisory. When asked if supervisory experience was shown by Ms. Greer's answer of "2" for the number of individuals supervised, Ms. White answered: "Possibly, yes." Then, when asked whether Ms. Hensley could advance Ms. Greer to an interview, Ms. White acknowledged that this advancement "could have occurred." A factfinder could reasonably infer from Ms. White's testimony that Ms. Hensley had the discretion to advance

15

Ms. Greer's application to the interview stage and didn't do so because of Dr. McDonnell's anti-military animus.

Like Ms. White, Ms. Susan Leiker explained that ambiguities about an applicant's qualifications could be fleshed out during the interview process:

> Q. Okay. And can these qualifications then from a procedural standpoint, can these qualifications then be fleshed out in the interview process?
>
> A. Certainly.

Appellant's App'x, vol. III, at 664. This testimony also suggests that Ms. Hensley chose to disallow an interview because of Dr. McDonnell's anti-military animus rather than Ms. Greer's lack of supervisory experience.

The factfinder could reasonably infer discretion not only from the testimony of Ms. White and Ms. Leiker but also from Ms. Greer's testimony about Ms. Hensley's explanation for her decision.[6] When Ms. Greer asked why she wouldn't get an interview, Ms. Hensley explained that Dr. McDonnell had given "instructions" to leave Ms. Greer in her current job as long as she remained in the military. Appellant's App'x, vol. II, at 551; *see* Part IV(A)(2)(a), above.

---

[6] Ms. Greer also argues that the City (1) had the discretion to contact applicants to address ambiguities in their application and (2) exercised that discretion by contacting an applicant for another job to clarify his interest in a full-time position. We need not address these arguments because Ms. Greer's other evidence suffices to create a genuine dispute of material fact.

16

Given the testimony by Ms. White, Ms. Leiker, and Ms. Greer, a factfinder could reasonably determine that Dr. McDonnell's anti-military animus was a motivating factor for Ms. Hensley's decision not to advance Ms. Greer to an interview.

## B.    The Defendants' Same-Action Defense

The district court also concluded that the defendants had proven that they would not have advanced Ms. Greer's application to an interview even if she were not in the Navy Reserves. Because this is an affirmative defense, the defendants had the burden of proving that "no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (emphasis omitted) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

The defendants have not met this heavy burden. As discussed above, a factfinder could reasonably attribute Ms. Hensley's decision to anti-military animus rather than an ironclad city practice. So the defendants were not entitled to summary judgment on their affirmative defense.

## V.    Conclusion

A genuine dispute exists on whether Ms. Hensley rejected Ms. Greer's application because of anti-military animus. We thus reverse the district court's award of summary judgment.

17