FILED
United States Court of Appeals
Tenth Circuit

November 5, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

PAUL D. RUSSELL,

     Plaintiff - Appellant,

v.

DANIEL DRISCOLL, Secretary of the
Army,

     Defendant - Appellee.

No. 24-3187

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:22-CV-04035-DDC)**

_____

Submitted on the briefs:*

Peter Charles Rombold, Hoover, Schermerhorn, Edwards, Pinaire & Rombold, Junction City, Kansas, for Plaintiff-Appellant.

Duston J. Slinkard, Acting United States Attorney, and Michelle A. Jacobs, Assistant United States Attorney, Office of the United States Attorney for the District of Kansas, Topeka, Kansas, for Defendant-Appellee.

_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

_____

Paul D. Russell brought a Title VII discrimination claim against his employer, the United States Army, alleging his female supervisor treated him and other men in her division with antagonism and contempt, thus creating a hostile work environment based on gender. The district court granted summary judgment against Russell, and he now appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

During the timeframe relevant to this lawsuit, Russell was a civilian Army employee working at the Irwin Army Community Hospital, Fort Riley, Kansas. Russell worked in the hospital's medical logistics division. He was acting chief of that division from May 2017 to November 2018, when Major Tamara Tran was appointed division chief.

Tran quickly began taking steps that—according to a later investigation—were motivated by gender bias. On one occasion, she held gender-segregated meetings, assigned the men and women of her division different books to read, and commented on the relative lack of women in supervisory positions. She also seemed to allow women to meet with her without a prior appointment but usually required men to make an appointment.

_____

[1] We derive our factual narrative from the district court's summary judgment order. The district court stated that its narrative came from "facts [that] are stipulated, uncontroverted, or, where controverted, are [presented] in the light most favorable to [Russell]." Aplee. Suppl. App. at 12. As we will discuss below, Russell believes the district court's narrative was underinclusive, but he does not argue it was inaccurate as far as it goes.

Russell felt singled out by Tran. She brushed off his assistance when transitioning into the division chief role; at least once, she publicly criticized some of the decisions he made during his time as acting chief; she required him to change his e-mail signature from "Chief of Logistics Readiness" to "Readiness Manager"; she removed him from an e-mail distribution list meant for leadership; she copied four other employees on an e-mail to him about a personal financial matter (which Russell perceived as an attempt to embarrass him); and, in anticipation of her maternity leave, she tried to appoint a non-supervisory female employee as acting chief (a role Russell believed should have gone to him).[2]

Eight months into Tran's tenure, and after receiving complaints from logistics division employees about both Tran and Russell, Tran's supervisor ordered an internal investigation. As foreshadowed above, the investigation concluded Tran was discriminating on the basis of gender in violation of the Army's equal-opportunity policy. The investigation cleared Russell of wrongdoing.

The final investigation report issued in July 2019. After pursuing internal administrative remedies, Russell filed this lawsuit claiming Tran had created a hostile working environment in violation of Title VII.

Following discovery, the Army moved for summary judgment against Russell. As relevant here, the district court agreed with the Army's argument that Tran's gender-biased actions were not sufficiently severe or pervasive to meet the legal

---

[2] Tran's supervisor did not approve Tran's choice and did not select Russell either, but instead selected a male Army officer to be Tran's temporary replacement.

3

standard for a hostile work environment. The court therefore entered final judgment in the Army's favor, leading to this appeal.

## II.    ANALYSIS

"We engage in de novo review of the district court's summary-judgment ruling, applying the same standard that applied in district court." *Greer v. City of Wichita*, 943 F.3d 1320, 1323 (10th Cir. 2019). Russell attacks the district court's disposition on two fronts. First, he says the district court's hostile-environment standard was too high in light of a recent Supreme Court decision. Second, he claims the district court did not make all reasonable inferences in his favor. *See id.* ("[T]he district court must view the evidence and all reasonable inferences favorably to [the non-moving party]."). We will address these arguments in turn.

### A.    Effect of the Supreme Court's *Muldrow* Decision

Russell first argues the district court's standard for what constitutes a hostile work environment was too high in light of *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which interpreted Title VII. We disagree with Russell's reading of *Muldrow*.

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). There are two major types of discrimination a plaintiff can allege under this authority: "discrete discriminatory acts and hostile work environment claims." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (*Morgan*). Stated briefly, a discrete-act claim asserts that a specific employment decision (*e.g.*, discharge,

4

forced resignation, or denial of tenure) violates Title VII. *See id.* at 111–12. In contrast, a hostile-environment claim asserts that a series of smaller actions—including ones that would not violate Title VII if analyzed discretely—add up to create an environment that is itself a deprivation of the terms, conditions, or privileges of employment. *See id.* at 115–16.

*Muldrow* was a case about a discrete discriminatory act. The plaintiff had worked for years in the city police department's "specialized Intelligence Division." 601 U.S. at 350. There, she enjoyed significant perks and prestige. *See id.* But a new division commander came in and replaced the plaintiff with a male officer. *Id.* at 351. The department reassigned the plaintiff to be a supervisor of a patrol division. *Id.* Her rank and pay remained the same but she lost the perks and prestige of her previous position. *Id.*

The plaintiff sued under Title VII, claiming her transfer from the Intelligence Division to a patrol division was a sex-motivated decision that deprived her of the "'terms [or] conditions' of her employment." *Id.* (brackets in original) (quoting § 2000e-2(a)(1)). She lost at the district and circuit levels, however, in light of circuit authority requiring her "to show that her transfer effected a *significant* change in working conditions producing material employment disadvantage." *Id.* at 352 (emphasis added) (internal quotation marks omitted). The Supreme Court granted certiorari "to resolve a Circuit split over whether an employee challenging a transfer under Title VII must meet a heightened threshold of harm—be it dubbed significant, serious, or something similar." *Id.* at 353. And the Supreme Court ruled that Title

VII imposes no such heightened threshold. *Id.* "[The plaintiff] need show only some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so." *Id.* at 359. Moreover, the plaintiff's allegations "[met] that test with room to spare," even though her post-transfer "rank and pay remained the same." *Id.*

Russell claims *Muldrow* lowered the bar for hostile-environment claims just as it did for discrete-act claims. He seems to understand that the Supreme Court defines a hostile-environment claim as one where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is *sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added) (citation and internal quotation marks omitted). But he says that "*Muldrow* abrogates Tenth Circuit *and Supreme Court* precedent which previously required that the harm complained of must be pervavise [sic] or severe." Aplt. Opening Br. at 10 (emphasis added).

Russell's claim that the Supreme Court must have meant to abrogate its own hostile-environment cases through *Muldrow*'s discrete-act analysis is essentially self-defeating, at least at this level of the federal court system. "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S.

6

477, 484 (1989). Thus, even assuming Russell is right about *Muldrow*'s effect, the Supreme Court has instructed us to continue following its earlier decisions until it says otherwise.

In any event, we do not believe the Supreme Court's hostile-environment decisions "rest on reasons rejected in [*Muldrow*]," *id.* "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct . . . over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115. Indeed, precisely because "not all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII," the complained-of conduct "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (brackets and internal quotation marks omitted). If that standard is met, the hostile environment is itself the unlawful "discriminat[ion] against [the victim] with respect to . . . terms, conditions, or privileges of employment." § 2000e-2(a)(1); *see also Morgan*, 536 U.S. at 117 ("[T]he entire hostile work environment encompasses a single unlawful employment practice . . . .").

In short, an inquiry into the severity or pervasiveness of the complained-of conduct is integral to determining whether any actionable Title VII injury occurred. Stated differently, if *Muldrow* implicitly abrogated the severity/pervasiveness analysis for a hostile-environment claim (as Russell contends), then *Muldrow*

abrogated the hostile-environment claim. But the Supreme Court has made clear that the severity/pervasiveness inquiry is "crucial" for "prevent[ing] Title VII from expanding into a general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

The Fourth Circuit, in an unpublished decision, reached essentially the same conclusion about *Muldrow* as we reach here, although its analysis is brief and it is unclear if *Muldrow*'s effect on hostile-environment claims was actually a contested issue in that case. *See Hansley v. DeJoy*, No. 23-1426, 2024 WL 4947275, at *2 (4th Cir. Dec. 3, 2024). The Fifth Circuit, also in an unpublished decision, rejected an argument that *Muldrow* applies to hostile-environment claims, but its reasoning appears to rest as much on the plaintiff's failure to develop the argument as it does on the underlying substance. *See Dike v. Columbia Hosp. Corp. of Bay Area*, No. 24-40058, 2025 WL 315126, at *5 n.25 (5th Cir. Jan. 28, 2025).

The only circuit-level decision we have located stating that *Muldrow* applies to hostile-environment claims just as it does to discrete-act claims is *McNeal v. City of Blue Ash*, 117 F.4th 887, 904 (6th Cir. 2024). Similar to the Fourth Circuit's *Hansley* decision, it is unclear if *Muldrow*'s effect on hostile-environment claims was a contested issue in *McNeal*. In any event, *McNeal* holds that, following *Muldrow*, a hostile-environment plaintiff need not "show 'significant' harm." 117 F.4th at 904 (quoting *Muldrow*, 601 U.S. at 355). Rather, the usual inquiry into "whether a hostile-work environment was severe or pervasive enough to violate Title VII"

should now be interpreted to mean "whether it left an employee 'worse off respecting employment terms or conditions.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355).

We disagree with the Sixth Circuit's analysis. It seems circular to ask "whether [the hostile work environment] left an employee 'worse off respecting employment terms or conditions,'" *id.* By definition, a legally actionable "hostile" work environment is one so bad it "alter[s] the conditions of the victim's employment." *Meritor*, 477 U.S. at 67 (brackets and internal quotation marks omitted). To say that *Muldrow* changed this for hostile-environment claims is essentially to say that *Muldrow* gutted the very thing that distinguishes hostile-environment claims from discrete-act claims.

For all these reasons, we reject Russell's argument that the district court erred when it did not apply *Muldrow* to his hostile-environment claim.

**B.    Summary Judgment Inferences from the Internal Investigation Report**

The Army's internal investigation report states that Tran "created a hostile work environment," Aplt. App. vol. 4 at 505, or a "toxic work environment," *id.* at 510. Discussing these findings, the district court noted the report never "assesse[d] the severity or pervasiveness of [the] hostile work environment—an analysis required by the governing law," and therefore "the court [could not] adopt, whole hog, the conclusions of the internal investigation." Aplee. Suppl. App. at 47 n.9. Russell "acknowledges that the [district court] was correct in this regard," but he says the district court was still "required to give the findings of the investigation

9

due weight and to grant [him] all reasonable inferences which could be made from those findings." Aplt. Opening Br. at 11.

We conclude this argument is waived for lack of development. Russell simply declares, without citation to authority, that the district court had a duty to treat the internal investigation report—both its factual *and* legal conclusions—as evidence to be weighed in the summary judgment balance like all other evidence. This may or may not be correct, but it is not self-evidently correct, and we have no duty to find support for the argument ourselves. *See, e.g.*, *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument." (internal quotation marks omitted)). We therefore do not address this argument further.

## III.    CONCLUSION

We affirm the district court's judgment.