**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 31, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KENNETH PORTER,

    Plaintiff - Appellant,

v.

TRANS STATES HOLDINGS, INC.,

    Defendant - Appellee.

No. 24-1486
(D.C. No. 1:23-CV-00263-SBP)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

Plaintiff-Appellant Kenneth Porter sued his former employer, Trans States

Holdings, Inc. ("TSH"),[1] alleging discrimination and retaliation under the Uniformed

Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38

U.S.C. §§ 4301 to 4335. The district court granted summary judgment in TSH's

favor, finding Mr. Porter failed to meet his initial burden of showing that his military

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rules of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Mr. Porter's actual employer was Trans States Airlines ("TSA"), a now-defunct regional airline. TSH, a holding company, owned TSA from 1998 until it ceased operations in April 2020. Because the question of whether TSH was Porter's employer is not before us on appeal, we use TSH to refer to both TSA and TSH.

status was a motivating factor in his non-promotion and that TSH established legitimate nondiscriminatory reasons for not promoting Mr. Porter. Mr. Porter appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.    BACKGROUND

### A.    *Factual History*

TSH employed Mr. Porter as an airline pilot from March 26, 2001, through January 16, 2015. Throughout the fourteen years he worked for TSH, Mr. Porter was a member of the United States Navy Reserve. He took military leave multiple times during his employment, including for a seven-month deployment from June 2003 to January 2004 and for a three-year assignment at the Pentagon from 2008 to 2011.

In January 2006, Mr. Porter was promoted to the rank of Captain. Mr. Porter was never promoted again during the remaining nine years he worked at TSH, despite applying for several open positions for which he was qualified. Namely, in the spring of 2006, Mr. Porter applied to be a Line Check Airman, a management-level position "responsible for ensuring safety, security and quality in all operations, performing line checks by observing pilot proficiency during flights, and ensuring compliance by flight crews" with all company policies and procedures. App. Vol. III at 363. He was not selected for the position. Mr. Porter also applied for Line Check Airman positions in 2008 and on unspecified dates between 2012 and 2014, and his application was rejected each time. Mr. Porter claimed that he applied for positions as a Flight Manager and a Safety Flight Evaluator at some time between 2012 and 2014. TSH

2

stated that it has no record of Mr. Porter ever applying for a Flight Manager position.
It also asserts that TSH never had a position by the name of "Safety Flight
Evaluator," and that it had no record of Mr. Porter applying for such a position.

Mr. Porter asserted that TSH refused to promote him because of his military
status. To support this proposition, Mr. Porter relied on one comment that his
supervisor, Randall Zehnder, made to him in a private conversation.[2] Mr. Zehnder
was a Flight Manager and System Chief Pilot at TSH who was in Mr. Porter's chain
of command during most of Mr. Porter's tenure at TSH. Mr. Zehnder was himself a
military reservist during his employment at TSH, and he took military leave several
times before he was promoted to Flight Manager and System Chief Pilot. On an
unspecified date, Mr. Porter asked Mr. Zehnder "why [he] kept getting passed over
for promotion" in favor of more junior pilots. App. Vol. I at 122. Mr. Zehnder stated,
"Well, you also do a lot of military duty." *Id.* (emphasis omitted). The district court
found that there was no genuine dispute over the existence of this statement for the
purposes of evaluating TSH's motion for summary judgment.

TSH asserted that it declined to promote Mr. Porter not because of his military
status or military leave, but because "he had a bad attitude[;] was a 'hothead'"; he
"spoke negatively about [TSH]"; and "his poor attitude, which threatened employee
morale, was not indicative of a leader at [TSH]." App. Vol. II at 283. In support of

---

[2] Mr. Porter argued before the district court that several other facts evidenced
TSH's anti-military animus. But his appeal focuses only on whether Mr. Zehnder's
statement was sufficient to defeat TSH's motion for summary judgment.

these assertions, TSH relied on a declaration from Mr. Zehnder explaining that Mr. Porter was not promoted because he "did not embody the values [TSH] looked for in its leadership." App. Vol. III at 363. It also relied on a 2013 email chain in which a TSH employee named Stuart Scott stated that he was "considering [Mr. Porter] for the position of Line Check Airman" and asked for "relevant comments" from the individuals included on the email chain. *Id.* at 365. David Hayes, the former general counsel for TSH, replied to the email and stated that he objected to Mr. Porter's promotion to Line Check Airman because Mr. Porter was "too much of a ALPA[3] hothead." App. Vol. III at 366.

In response, Mr. Porter claimed that TSH's "comments about [his] fitness for promotion, [his] leadership skills, and other derogatory comments are a pretext to [TSH's] intentional discrimination." App. Vol. I at 123.

### B.    *Procedural History*

On January 30, 2023, Mr. Porter filed a complaint against TSH. Relevant to this appeal, Mr. Porter alleged that TSH violated USERRA by continuously denying him promotions because he took military leave.

TSH moved for summary judgment. In its motion, TSH argued that it was entitled to summary judgment because Mr. Porter did not identify enough evidence "to establish that Plaintiff's military status or leave was a substantial or motivating factor in [TSH's] decision not to promote him." App. Vol. II at 281. It emphasized

---

[3] ALPA is an acronym for the Airline Pilots Association, a civilian airline pilot union.

that Mr. Zehnder's statement about Mr. Porter's military duty was a "stray comment[]" that "cannot create a fact issue regarding discriminatory intent." *Id.* (citing *Starr v. QuikTrip Corp.*, 655 F. App'x 642, 646 (10th Cir. 2016) (unpublished)). TSH also argued that even if Mr. Porter met his initial burden of proving that his military status was a motivating factor in his non-promotion, summary judgment was still warranted because TSH could show by a preponderance of the evidence that it "refused to promote Plaintiff because he did not embody the values of a leader at [TSH], and Plaintiff has no evidence refuting or contradicting this legitimate, nondiscriminatory reason." *Id.* at 283.

Mr. Porter opposed the motion. He argued that Mr. Zehnder's statement was sufficient to establish TSH's intent to discriminate and retaliate against Mr. Porter.

The district court granted TSH's motion for summary judgment. The court concluded that Mr. Porter failed to meet his initial burden of showing that his military status was a motivating factor in his non-promotion. It first stated that "Mr. Porter ha[d] no direct evidence" supporting his claim that his military status was a motivating factor for his non-promotion because Mr. Porter failed to specifically deny TSH's allegation that no "TSH official ever told him that he was not considered for a promotion because of his military leave." App. Vol. I at 18.

Turning to whether any circumstantial evidence supported Mr. Porter's claims, the court concluded that no inference of military hostility could be drawn from Mr. Zehnder's "solitary" and "isolated" remark, "which was made by an official who was himself a military reservist who deployed for Operations Desert Shield, Desert

5

Storm, and Iraqi Freedom during his employment with [TSH]." *Id*. at 38. The court also noted that Mr. Zehnder's statement was made "in the context of a personal conversation between the two men," and that there was no "evidence suggesting that Mr. Zehnder personally played a role in any promotion decision." *Id.* at 39.

Next, the court opined that even if Mr. Porter had shown that his military status was a motivating factor in TSH's decisions, summary judgment was still warranted because TSH established "legitimate independent reasons for declining to select Mr. Porter for promotions." *Id.* at 45. The court noted that TSH presented evidence that Mr. Porter was not promoted because of his lack of leadership skills and that Mr. Porter countered TSH's evidence with only his "speculative contention" that TSH's comments about his fitness for leadership were pretextual. *Id.* at 47. The court thus reasoned that Mr. Porter "failed to adduce sufficient evidence to establish that TSH's reasons for not promoting him were a pretext for discrimination or retaliation prompted by anti-military animus," and concluded that "TSH [was] entitled to summary judgment on his discrimination and retaliation claims for this additional reason." *Id.* at 47.

The district court entered judgment for TSH, dismissing Mr. Porter's claims and closing the case. Mr. Porter timely appealed.

## II.    STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022). "Summary judgment is appropriate

when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283 (10th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is only "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in favor of the non-moving party." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006).

### III.    ANALYSIS

Mr. Porter claims that TSH violated USERRA by declining to promote him because of his military service. USERRA provides that "[a] person who is a member of . . . a uniformed service shall not be denied . . . promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). An employer violates § 4311(a) when an employee's membership or service in the armed forces "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." *Id.* § 4311(c)(1). USERRA also prohibits employers from retaliating against individuals who seek to protect their rights under the statute. Relevant here, USERRA provides that an employer may not "take any adverse employment action or other retaliatory action against any person because such person . . . has taken an

7

action to enforce a protection afforded any person under this chapter" or "has exercised a right provided for in [USERRA]." *Id.* § 4311(b). An employer violates this provision when an employee's protected action under USERRA "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action . . . or exercise of a right." *Id.* § 4311(c)(2).

We use a two-part inquiry to evaluate discrimination and retaliation claims under USERRA. First, an employee bears the initial burden of showing that his military membership was a motivating factor in the adverse employment action. *See Greer v. City of Wichita*, 943 F.3d 1320, 1323 (10th Cir. 2019); *see also Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (unpublished).[4] Second, if the employee meets this initial burden, the burden shifts to the employer to "prove that it would have taken the same action even if the employee had not been in the military." *Greer*, 943 F.3d at 1323.

Mr. Porter argues that he met his initial burden by providing evidence that Mr. Zehnder admitted to him that his military service was a motivating factor in his non-promotion. And he argues that TSH did not prove that it would have declined to promote Mr. Porter regardless of his military status. We address each of his arguments in turn.

---

[4] "We cite unpublished cases for their persuasive value only and do not treat them as binding authority." *United States v. B.N.M.*, 107 F.4th 1152, 1169 n.10 (10th Cir. 2024).

### A.    Initial Burden

An employee who brings a claim of discrimination or retaliation under USERRA bears the initial burden of proving that his military membership was a motivating factor in the adverse employment action. *See Greer*, 943 F.3d at 1323. "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Lewis*, 217 F. App'x at 786 (alteration in original) (quotation marks and citation omitted). Thus, to defeat TSH's summary judgment motion, Mr. Porter was required to "establish a genuine issue of material fact as to whether his military status was a motivating factor" in his non-promotion. *See id.* at 787.

"The factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence." *Sheehan*, 240 F.3d at 1014. Direct evidence of discrimination "demonstrates on its face that the employment decision was reached for discriminatory reasons . . . . without inference or presumption." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (internal quotation marks omitted). Circumstantial evidence, in contrast, "permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination that discrimination, in fact, has occurred." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). In the context of USERRA, a court may infer discriminatory motivation from various indicators, including "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity." *Sheehan*, 240 F.3d at 1014.

The district court concluded that "Mr. Porter ha[d] no direct evidence" supporting his claim that his military status was a motivating factor for his non-promotion because Mr. Porter "admit[ted] that no TSA or TSH official ever told him that he was not considered for a promotion because of his military leave." App. Vol. I at 18. It reached this conclusion because Mr. Porter failed to specifically address TSH's statement of undisputed material facts in its motion for summary judgment, which included the allegation that "[n]o one at TSA or TSH ever told [Mr. Porter] he was not considered for a promotion because of his military duty." App. Vol. II at 271. The court therefore treated the fact as admitted for purposes of the summary judgment motion.

It is true that Mr. Porter did not take a position on each of the facts listed in TSH's statement of undisputed material facts. Instead, he responded with his own list of disputed facts in his response to TSH's motion for summary judgment. Because Mr. Porter did not oppose TSH's facts in the manner required by Federal Rule of Civil Procedure 56, the district court was within its discretion to treat TSH's statement of undisputed facts as accepted for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

Even so, it is clear from the record that there is a genuine dispute about whether any TSH employee "ever told [Mr. Porter] he was not considered for a promotion because of his military duty." *See* App. Vol. II at 271. In direct

10

contradiction to this assertion, Mr. Porter asserted that he asked Mr. Zehnder why he was passed over for multiple promotions, and Mr. Zehnder answered, "Well, you also do a lot of military duty." Supp. App. at 17. Mr. Porter supported this statement with a declaration, and the district court acknowledged that there was "no genuine dispute concerning the existence of" the statement for the purposes of evaluating TSH's motion. App. Vol. I at 18 n.5. So, although Mr. Porter did not specifically deny TSH's allegation, TSH did not show the absence of a genuine dispute of fact as to this allegation. We therefore reject the district court's conclusion that Mr. Porter admitted that no TSH employee ever told him that he was denied promotions because of his military leave. *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002) ("If the nonmoving party fails to respond [to a motion for summary judgment], the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial."); *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) ("Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed.").

Examining the evidence in the light most favorable to Mr. Porter, as we must do at this stage, Mr. Zehnder's statement appears to be an admission that Mr. Porter's military service was a motivating factor in TSH's decision not to promote him. Because the statement tends to show that TSH "acted on [its] discriminatory beliefs" in making an adverse employment action, *see Ramsey v. City & Cnty. of Denver*, 907

11

F.2d 1004, 1008 (10th Cir. 1990), and does not require inference or presumption, *see Fassbender*, 890 F.3d at 883, the statement constitutes direct evidence of discriminatory intent.

TSH resists this conclusion, contending that the "single comment . . . made during a personal conversation between Porter and Zehnder on an unidentified date and time" is a "stray remark" that "cannot create an issue of fact regarding discriminatory intent." Appellee's Br. at 11–12.

We have held that "stray remarks," or "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). This is true even when the statements reflect overt bias toward a particular group. *See, e.g.*, *Starr*, 655 F. App'x at 646 ("[E]ven if the comments had revealed a hostility toward service-members, isolated remarks, unrelated to the disputed employment action, are insufficient to demonstrate discriminatory animus." (internal quotation marks and brackets omitted)). But remarks are only "stray" when they lack a nexus to the challenged employment decision. *See Cone,* 14 F.3d at 531–32; *see also Sims v. KCA, Inc.*, 28 F.3d 113, 1994 WL 266744, at *4 (10th Cir. June 17, 1994) (unpublished table decision). If "a nexus exists between the allegedly discriminatory statement and the company's [adverse employment] decision," that statement can support an inference of discrimination. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000); *see also Cone*, 14 F.3d at 531.

12

This court's decisions in *Danville v. Regional Lab Corp.*, 292 F.3d 1246 (10th Cir. 2002), and *Tomsic v. State Farm Mutual Automobile Insurance Co.*, 85 F.3d 1472 (10th Cir. 1996), illustrate this distinction. In *Danville*, a member of a committee charged with selecting interview candidates stated in a committee meeting that the plaintiff "might not be around very long." 292 F.3d at 1251. We held that the comment was "circumstantial evidence from which an inference of discriminatory intent might be drawn," rather than a stray remark. *Id.* We reasoned, "While the remark may be 'ambiguous' in the sense of being susceptible to more than one interpretation, and 'isolated' in the sense that it was only made once, this is not a 'stray' remark in the sense that it lacks a nexus to the employment decision." *Id.* Since the remark "referred directly to the plaintiff and was made during the committee meeting at which interview candidates were selected," we concluded there was enough evidence for a jury to find that the remark explained why the plaintiff was not selected for an interview. *Id.*

Similarly, in *Tomsic*, we considered remarks from a supervisor suggesting that one plaintiff might "lack motivation because her husband earned a substantial income" and that the other plaintiff might "encounter problems in her marital relationship . . . because her husband would probably become uncomfortable with her earning more than he." 85 F.3d at 1477–79. We held that these comments were not stray remarks because they "were directed to the plaintiffs individually" and were made to the decisionmaker. *Id.* at 1479. The statements thus, taken in context, permitted a jury to infer that "unlawful bias was a motivating factor in defendant's

13

decision" to terminate the plaintiffs. *Id.* We distinguished the case from *Cone*, where a comment that "long term employees have a diminishing return" was considered a "stray remark[]" because it was not directed at the plaintiff and was made by a non-decisionmaker, and thus lacked a nexus to the employer's allegedly discriminatory decision. *Id.* (quoting *Cone*, 14 F.3d at 531).

Here, viewing the facts in the light most favorable to Mr. Porter, there is a clear nexus between Mr. Zehnder's statement and the challenged employment decisions. Mr. Zehnder's statement was made in direct response to Mr. Porter's question about why TSH passed him over for promotions. So, like the statements in *Danville* and *Tomsic*, Mr. Zehnder's statement referred to Mr. Porter. And the context of the statement in the broader conversation implies that it was an explanation for Mr. Porter's non-promotion. Thus, Mr. Zehnder's statement supports the assertion that Mr. Porter's military duty was a motivating factor in TSH's decisions not to promote him.

TSH contends, however, that Mr. Zehnder's remark is not probative of discriminatory intent because there was "no evidence that Zehnder was the decisionmaker with regard to the promotional decisions." Appellee's Br. at 12. And because there was no evidence that Mr. Zehnder was a decisionmaker, TSH argues that Mr. Porter has not shown a causal nexus between the statement and the adverse employment actions.

Mr. Porter counters that he has raised a genuine issue of material fact as to whether Mr. Zehnder was the decisionmaker with respect to the challenged decisions.

Mr. Porter points to two pieces of evidence found in the record. First, he identifies the following exchange in his deposition:

> Q. Do you recall who you followed up with in email [about your application for Line Check Airman]?
>
> [Mr. Porter]. Most likely with Randy Zehnder.
>
> Q. Was Randy Zehnder in charge of hiring into that position?
>
> [Mr. Porter]. I believe he was.

App. Vol. III at 339.

Second, he points to the 2013 email chain in which Mr. Scott asked a group of individuals, including Mr. Zehnder, for input about whether to promote Mr. Porter. Mr. Porter argues that Mr. Zehnder's inclusion on this email chain shows that he was at least involved in the decision-making process.

Although Mr. Porter's evidence of Mr. Zehnder's status as a decisionmaker is not robust, there is no evidence in the record contradicting it. Indeed, in his sworn declaration, Mr. Zehnder did not deny that he was involved in the decisions not to promote Mr. Porter. Moreover, even if Mr. Zehnder were not a decisionmaker, the facts identified by Mr. Porter raise a genuine dispute about whether Mr. Zehnder was privy to the reasons for Mr. Porter's non-promotion. Mr. Zehnder stated in his declaration that he was "aware of . . . management's perception of [Mr. Porter] as an employee." *Id*. at 363. And indeed, TSH relied on Mr. Zehnder's declaration to support its allegation that TSH declined to promote Mr. Porter for nondiscriminatory reasons—*i.e.*, because Mr. Porter was "antagonistic," "often talked negatively about the Company and management," "routinely complained about the Company," "and

15

posed a threat to employee morale." *Id.* Together, these facts suggest that Mr. Zehnder was, if not directly involved in the promotion decisions, at least aware of TSH's reasoning for declining to promote Mr. Porter.

Regardless of whether Mr. Zehnder was a decisionmaker or simply knew about the reasons for Mr. Porter's non-promotion, the causal chain remains unbroken. In either scenario, Mr. Zehnder's statement tends to show that Mr. Porter's military duty factored into TSH's decisions not to promote him.

Although it is a close case, we find that Mr. Porter has presented sufficient direct evidence to satisfy his initial burden of showing by a preponderance of the evidence that his protected status was a motivating factor his non-promotion. We now turn to the second step of USERRA analysis.

### B.    *Non-Discriminatory Justification*

Because Mr. Porter met his initial burden of establishing a genuine issue of material fact as to whether his military status was a motivating factor in his non-promotion, the burden shifts to TSH to "prove that it would have taken the same action even if [Mr. Porter] had not been in the military." *See Greer*, 943 F.3d at 1323.

Unlike discrimination cases under Title VII of the Civil Rights Act of 1964— where the burden of production shifts to the employer while the burden of persuasion remains with the employee—under USERRA, "both the burden of production and the burden of persuasion shift to the employer" once the employee meets his initial burden. *Lewis,* 217 F. App'x at 786–87; *see also Sheehan*, 240 F.3d at 1014. Thus, to prevail on summary judgment, TSH had to "establish not just that it had a legitimate

16

basis for taking the adverse employment action, but as a matter of uncontroverted fact that it would have taken the adverse employment action regardless of the employee's military status." *See Lewis*, 217 F. App'x at 787; *see also Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 20 (1st Cir. 2007) (it is the defendant's burden to "demonstrate, by a preponderance of the evidence, that it *would* indeed have fired [the plaintiff], regardless of his military status").

The district court failed to properly apply this standard. The court concluded that TSH "established legitimate independent reasons for declining to select Mr. Porter for promotions" and that Mr. Porter "failed to present evidence creating a genuine dispute about those reasons." App. Vol. I at 45. Specifically, the court noted that Mr. Porter countered TSH's evidence of its proffered reasons for declining to promote Mr. Porter with only one "speculative" and "unsupported" statement asserting that TSH's purported rationale was a pretext, and so it determined that Mr. Porter "failed to adduce sufficient evidence to establish that TSH's reasons for not promoting him were a pretext for discrimination or retaliation prompted by anti-military animus." *Id.* at 46–47. But under USERRA, the burden was not on Mr. Porter to disprove TSH's asserted legitimate reasons for not promoting Mr. Porter. Rather, it was TSH's burden to "establish . . . as a matter of uncontroverted fact" that it would have declined to promote Mr. Porter regardless of his military status. *See Lewis*, 217 F. App'x at 787. The district court did not make such a finding.

After reviewing the record, we conclude that TSH did not meet its burden. TSH asserts that Mr. Porter was denied promotions because his attitude and demeanor made him unfit for management-level positions. It points largely to Mr. Zehnder's sworn declaration, in which he stated that Mr. Porter was not promoted because he was "antagonistic," "often talked negatively about [TSH]," "routinely complained about [TSH,] and posed a threat to employee morale." App. Vol. III at 363. But there is little evidence in the record corroborating Mr. Porter's alleged attitude problems. For instance, there are no disciplinary records showing any issues with Mr. Porter's attitude or performance over the course of his fourteen-year tenure at TSH. Indeed, aside from Mr. Zehnder's declaration, the only evidence supporting TSH's proffered reasons for not promoting Mr. Porter is a single email in which Mr. Hayes, the former general counsel for TSH, objected to Mr. Porter's promotion to Line Check Airman because Mr. Porter was "too much of a ALPA hothead." App. Vol. III at 366. But this email does not unambiguously support TSH's contention that Mr. Porter was not promoted because of his attitude problems. Rather, Mr. Hayes's reference to Mr. Porter as an "ALPA hothead" implies that he objected to Mr. Porter's promotion because of Mr. Porter's involvement in the union, not necessarily because of his demeanor or attitude.

And even if the jury were to believe that Mr. Porter's attitude and union involvement factored into the decisions not to promote him, the record does not establish that these reasons, standing alone, would have induced TSH to refuse to promote Mr. Porter. The record does not show, for example, that TSH routinely

18

declined to promote employees who had attitude problems similar to Mr. Porter's or employees who were involved in ALPA. *Cf. Savage v. Fed. Express Corp.*, 856 F.3d 440, 452 (6th Cir. 2017) (holding that FedEx carried its burden by showing that the plaintiff repeatedly violated FedEx's shipping policy and "all employees that [human resources] knew to have violated the . . . shipping policy were terminated for their violations").

Further, the evidence presented by Mr. Porter creates a genuine dispute of fact as to whether TSH would have declined to promote Mr. Porter but for his military service. He presented evidence that Mr. Zehnder, a decisionmaker or at least someone with personal knowledge about the reasons why Mr. Porter was not selected for promotion, told Mr. Porter that he was passed over for promotion because he does "a lot of military duty." App. Vol. I at 122. This statement directly contradicts Mr. Zehnder's own declaration, in which he claimed that Mr. Porter was denied promotions because of his attitude and demeanor, and affirmatively stated that nobody from TSH denied Mr. Porter a promotion because of his military duty or made negative comments about his military duty. This inconsistency in Mr. Zehnder's explanation is sufficient to create a triable issue of fact about whether those reasons were pretextual. *See Tomsic*, 85 F.3d at 1479.

Accordingly, we conclude that TSH has not established "as a matter of uncontroverted fact" that it would have declined to promote Mr. Porter even if he had not taken military leave. *See Lewis*, 217 F. App'x at 787.

19

## IV.    CONCLUSION

Based on the foregoing analysis, we REVERSE the district court's order granting summary judgment and REMAND for further proceedings consistent with this order and judgment.[5]

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[5] Mr. Porter's request for waiver of the appellate filing fee is granted. *See* 38 U.S.C. § 4323(h)(1).